Debra K. Hughes, Plaintiff-Appellant,
v.
Gerald (Rick) Folker, Defendant-Respondent.
No. 04-0618.
Court of Appeals of Wisconsin.
Opinion Filed: August 24, 2004.
¶1 PETERSON, J.[1]
Debra Hughes appeals a judgment that she is responsible for the electric bill associated with a store she ran for several months on Gerald Folker's campground. She argues (1) the circuit court erred by not awarding her the costs of materials and labor for setting up the store; (2) the amount of the electric bill was not sufficiently proven; (3) she should be able to retrieve fixtures from the store; and (4) the judge was biased. We disagree and affirm the judgment.

BACKGROUND
¶2 Hughes and Wayne Bathke[2] rented a lot at Folker's campground. At some point, Hughes became aware that Folker was interested in putting a convenience store in a pole shed on the property. Although the record is unclear how it came about, Hughes took out a $3,500 loan, renovated half the shed, and began to run the store. The parties did not have a written contract, and they dispute the terms of the oral contract. Essentially, however, Hughes was to pay a reduced rent on the half of the shed, and she would be responsible for the materials and supplies necessary to renovate the shed and operate the store.
¶3 The store opened in June 2003, but Hughes closed it down in September because it was not making any money. Hughes informed Folker in a letter dated September 25, 2003, that she would no longer be running the store. She asked Folker for $3,261 for the cost of materials and utilities, as well as for the return of some fixtures remaining in the store. These fixtures included a freezer, cash register, display stand, a drawer, and a Pepsi machine.
¶4 When Folker did not pay what she asked, Hughes commenced this action. The complaint states that she was seeking $5,000, including the cost of materials, labor and utilities put into the building. She also requested the return of the fixtures. Folker stated in his answer to Hughes' complaint that he was asking for $3,299.69 from Hughes for rent, plus electric and trash costs.[3]
¶5 The circuit court concluded there was no contract because there was no meeting of the minds. Each party had a different view of what their agreement was. Therefore, the court did not order any rent to be paid. It ordered Hughes to pay Folker for the electric bill for the months of June through September, in the amount of $242.65. Finally, the court allowed Hughes to go into the shed to collect the fixtures that remained there.

DISCUSSION
¶6 To the extent we can discern Hughes' arguments, she appears essentially to be questioning the sufficiency of the evidence. We ascertain four arguments: (1) Folker should have been ordered to pay for the costs of labor and materials; (2) there was not sufficient evidence of the amount of the electric bill; (3) she should get her fixtures back; and (4) the judge was biased.
¶7 Folker essentially takes issue with the circuit court's findings of fact. A circuit court's findings shall not be set aside unless clearly erroneous. See WIS. STAT. § 805.17(2). Additionally, the circuit court has greater latitude in the conduct of small claims trials, as the rules of evidence do not apply. See WIS. STAT. § 911.01(4)(d).
¶8 We turn first to the cost of labor and materials. Hughes argues that the amount she is asking for is reasonable and in fact is less than what Folker would have had to pay to have the work done professionally. However, the circuit court determined that the store was a business investment and the store's failure was not Folker's fault. Therefore, the court did not hold Folker responsible for the cost of labor and materials. We conclude this was a reasonable determination. There is nothing in the record to suggest that, had the store been successful, Folker would have been able to share in the profits. Thus, he should not be held responsible for the losses. Further, as the circuit court noted, Folker was losing money on the venture as well. For example, he was not able to recoup the rent for the shed because there was no meeting of the minds and therefore no contract.[4] Thus, the court's determination not to award Hughes the cost of labor and materials was not clearly erroneous.
¶9 Hughes' second argument is that there was insufficient evidence to prove the amount of the electric bill. The court ordered Hughes to pay the electric bill for the months of June through September. Hughes herself stated that the electric bill was approximately $182 total for the months of June through August. Folker stated that the exact amount was $181.24 for those months. The amount for September was more difficult to ascertain because the bill was for both September and October without showing separate amounts for each month. However, Wanda Tanner stated that the average bill was $60.41 a month.[5] No one objected to this figure. The court accepted the average amount and added it to the amount for June through August, for a total of $242.65. Again, no one objected to this figure. Because the court used a reasonable method to ascertain the amount of the electric bill, its finding is not clearly erroneous.
¶10 We further conclude that it was reasonable to order Hughes to pay the bill. Earlier in her testimony, Hughes stated, "I never denied that I owed you [Folker] the utilities." On appeal, Hughes argues she should not have to pay for September because the "Judge cut September off and then he charged [Hughes] for it." However, what the court actually said was "I am cutting things off with September." The ensuing discussion regarding separating the bill from September from that of October makes it clear that the court was referring to cutting it off after September, not before, as Hughes alleges.
¶11 Third, Hughes argues for the return of her fixtures. However, the circuit court has already ordered that she may retrieve them. In fact, a day was set for her to pick them up. Thus, there is nothing for us to add or retract from the court's order. The only additional thing she asks for here is the return of a Pepsi machine. This machine was discussed at length in the circuit court. Hughes claims it was in the shed, but it is no longer there. No one, including Folker, Hughes or Pepsi, knows where this machine is. The court stated, "I can't manufacture a Pepsi machine for you. I don't know where it is. You are going to be responsible for that." After further discussion regarding the machine, Hughes conceded, "I guess I will be responsible for it." Thus, the court's decision regarding the Pepsi machine was reasonable.
¶12 Finally, Hughes argues that the court was biased. She argues there was "an offer made by Ms. Tanner, an offer for a free meal, that Hughes feels may have been an influence on the judge." The page in the record Hughes cites for this proposition mentions a restaurant located on the campground. The following exchange occurred:
COURT: You have a restaurant, and I don't want to call it a tavern, but a nightclub, is it, the Rock Lake 
MS. TANNER: Bar and grill type thing.
COURT: I have heard of that. Fish fry on Friday nights, and I have heard of that, and I have never been able to find it and get up there. When you get the results here, maybe I won't be welcome.
The discussion then turned to the issue of the fixtures. Nothing in this passage suggests that the judge was being offered a free meal. There is no discussion anywhere else in the transcript from which Hughes could conclude the judge was offered a free meal. Nothing suggests the court was in any way biased.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Bathke is not a party to this case. For that reason, we will refer only to Hughes throughout this opinion.
[3] According to Folker's answer, the breakdown of this amount was: $1,500 for one year's rent; $472.62 for "electric for building and campsite (thru September 30, 2003);" $46.62 for trash pick-up; and $1,280.65 for "cost to have electric to building (done for their use)."
[4] Hughes does not dispute the court's ruling that there was no contract.
[5] The record is unclear as to who exactly Wanda Tanner is. However, she appears to be somehow associated with Folker or the campground because her name appears on the campground's letterhead.